UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>– against –<br><br>G.L.,<br><br>Defendant. | 12-CR-475<br><br>Statement of Reasons for Sentencing<br>Pursuant to 18 U.S.C. § 3553(c)(2) |

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Table of Contents**

I.     **Introduction** ............................................................................................................... 1
II.    **Facts** ........................................................................................................................... 2
   A.   Offense Conduct ..................................................................................................... 2
   B.   Defendant's Background ........................................................................................ 3
III.   **Procedural History** .................................................................................................... 3
IV.    **Offense Level and Category** ..................................................................................... 4
V.     **Factors to be Considered** .......................................................................................... 4
   A.   Fact Sheet: Trends in U.S. Corrections ................................................................... 5
   B.   Children as Collateral Damage ............................................................................... 6
   C.   Vulnerable as Camouflage ...................................................................................... 6
   D.   Compensation of Drug Mules ................................................................................. 7
   E.   Need for Consistency .............................................................................................. 7
VI.    **Law** ............................................................................................................................ 8
VII.   **18 U.S.C. § 3553(a) Considerations** ......................................................................... 9
VIII.  **Present Status** .......................................................................................................... 10
IX.    **Sentence** .................................................................................................................. 10

   I.    **Introduction**

   With the increase in sentencing discretion and concern over unnecessarily long incarcerations has come an increased need for each judge to try to avoid inconsistency in his or her own sentences. Stating reasons for sentencing in memoranda helps minimize both dangers. It is a daunting task. *See infra* Part V.

This memorandum addresses a nuanced scenario: a mother who used the presence of her young daughter as camouflage to help smuggle drugs into the United States.

The tactical use of children to evade detection in drug smuggling warrants heightened punishment. Deterrence of this use of, and risk to, children is vital in our sentencing scheme. It is this court's practice to provide substantial carceral sentences in such cases.

Nevertheless, the special circumstances here—notably, the defendant's immediate cooperation with law enforcement and the special needs of the child, which only her mother can meet—require a deviation from general practice.

## II. Facts

### A. Offense Conduct

On May 20, 2012, G.L. arrived, with her five-year old daughter at John F. Kennedy International Airport in Queens, New York. They were returning from the Dominican Republic.

After narcotic detector dogs honed in on her suitcase, the defendant was stopped. Discovered were 4,587.6 grams of cocaine. She was arrested. G.L. admitted to the attempt to smuggle the cocaine into the United States, and to smuggling $30,000 on her flight from New York to the Dominican Republic. Presentence Investigation Report of G.L. 3, Sept. 25, 2013. She conceded she had made a prior courier trip on April 12, 2012. *Id.* at 4; H'rg Tr. 4–5, Aug. 20–21, 2014. Her daughter accompanied her on each trip. *Id.*

Upon her arrest, G.L. provided substantial help to the government at considerable risk to herself. It has submitted a strong letter on her behalf. *See* 5K.1 Letter, Aug. 18, 2014 (sealed).

The defendant is remorseful. She is frightened about the possibility of losing her child. It is highly unlikely she will engage in such illegal conduct again.

### B. Defendant's Background

G.L. is an American citizen who resides in New York. Thirty-years old, she is the mother and primary caregiver to her now six-year-old daughter, who suffers from sickle cell disease, hyperthyroidism, and Attention Deficit Hyperactivity Disorder. The child attends weekly psychotherapy sessions.

Defendant separated from the child's father following his violence. Presentence Investigation Report, 9. The two are contemplating reuniting in an attempt to provide their daughter with a secure family life. Hr'g Tr. 4:7–9, 5:15–19, Mar. 17, 2015.

Since November 26, 2012, G.L. has been employed full-time as a data entry clerk. *Id*. at 5:2–5. She and her daughter reside together in a middle-class neighborhood in Queens. Hr'g Tr., Aug. 20–21, 2014. She maintains a close relationship with her family, but no member would be available to assume primary care for her daughter. Defendant's mother does not have space in her apartment. Hr'g Tr., Aug. 20–21, 2014. Her sister expressed doubts about her ability to assume care for the child; she has no car to transport her to therapy and cannot pay for the child's health care. Hr'g Tr., 4:7–18, Aug. 21, 2014.

### III. Procedural History

On December 20, 2012, the defendant pled guilty to one count of conspiracy to import cocaine into the United States. 21 U.S.C. §§ 952(a), 963, 960(a)(1) and 960(b)(1)(B)(ii).

Imposition of sentence was delayed for six months. This was in contemplation of a probationary sentence if the defendant could establish a satisfactory life in the interim. Hr'g Tr., Aug. 21, 2014.

On March 17, 2015, G.L. was sentenced to time served and five years of supervised release. Hr'g Tr. 5:20–6:4, Mar. 17, 2015.

3

The proceeding was videotaped to develop an accurate record of the courtroom atmosphere, as well as some of the subtle factors and considerations that a district court must consider in imposing a sentence. *See In re Sentencing*, 219 F.R.D. 262, 264–65 (E.D.N.Y. 2004) (describing the value of video recording for possible review of sentences on appeal). This practice has been followed for several years.

**IV.     Offense Level and Category**

The total offense level is 21. A criminal history category of I yields a guidelines imprisonment range of 37–46 months. U.S.S.G. Ch. 5 Pt. A.

**V.     Factors to be Considered**

Individuals incarcerated as a result of drug convictions comprise half of our prison population. *Trends in U.S. Corrections*, The Sentencing Project, 3 (2013). Most are low-level lawbreakers with no record of violent offenses. *Id.*

The number of women in prison, many of whom are incarcerated for drug offenses, has been increasing at a rate fifty percent more than that of men since 1980. *Id.* at 4; *see also* A Lifetime of Punishment: The Impact of the Felony Drug Ban on Welfare Benefits, The Sentencing Project, 4 (Nov. 2013); *Conference, Women, Prison, and Gender-Based Violence*, Cornell Law School's Avon Global Center for Women and Justice, et al. (2015). While the Guidelines must not discriminate between male and female criminals, family responsibilities cannot be ignored in individual cases. 28 U.S. § 994. *Cf.* Jenni Vainik, *The Reproductive and Parental Rights of Incarcerated Mothers*, 46 Fam. Ct. Rev. 670, 676 (2008) (citation omitted) ("incarcerated mothers are typically their children's sole caregiver").

4

## A. Fact Sheet: Trends in U.S. Corrections



*Trends in U.S. Corrections*, The Sentencing Project, 4 (2013).

### B. Children as Collateral Damage

"Incarceration of a parent normally causes major negative economic, social, and psychological consequences to the child, and may have life-long [adverse] repercussions." Michal Gilad, *The Young and the Helpless: Re-Defining the Term "Child Victim of Crime,"* 32 (U. Penn. Law School, Working Paper No. 14–23); *cf.* Jean C. Lawrence, *ASFA in the Age of Mass Incarceration: Go to Prison—Lose Your Child?* 40 Wm. Mitchell L. Rev. 990, 1003 (2014).

> For children under the age of five, both lack of parent-child bonding and disruption of an existing bond can create difficulties in cognitive and language development as well as in forming relationships and regulating emotions later in life. Older children separated from their parents suffer developmental harm as well, often in the form of behavioral and educational difficulties.

Sarah Abramowicz, *Beyond Family Law*, 63 Case W. Res. L. Rev. 293, 321 (2012) (citations omitted); *see also Bannister*, 786 F. Supp. 2d at 653–55 (collecting literature and discussing effect of incarceration on family and community).

"Many inmates have a difficult time reestablishing their relationships with their children upon their release." Vainik, 46 Fam. Ct. Rev. at 680 (citation omitted).

### C. Vulnerable as Camouflage

The use of vulnerable people, including young women and children, to smuggle drugs is common. *See e.g.*, Dane Schiller, *For Drug Smugglers, Children Often Used as Camouflage*, Houston Chronicle, Mar. 16, 2015, at http://www.houstonchronicle.com/news/houston-

texas/houston/article/For-drug-smugglers-children-often-used-as-6136955.php; Damien Cave, *Mexico's Drug War, Feminized*, N.Y. Times, Aug. 14, 2011, at SR9.

### D.  Compensation of Drug Mules

The market for drug mules takes into account the prospect of punishment.  *See, e.g.*, David Bjerk & Caleb Mason, *The Market for Mules: Risk and Compensation of Cross-Border Drug Couriers* (Discussion Paper 8224: Institute for the Study of Labor), May 2014, *available at* http://ftp.iza.org/dp8224.pdf (finding direct correlation between compensation of drug mules and sentencing risk).  Risking a child probably draws somewhat higher compensation for the mule.

### E.  Need for Consistency

Congress has emphasized "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  Yet, the luck of the draw almost always will affect the sentence—to some extent reflecting the individual judge's life experience and reaction to the case.  Studies of disparities in sentencing focus on "inter-judge" variation rather than "intra-judge" variation.  *See, e.g.*, Crystal S. Yang, *Have Inter-Judge Sentencing Disparities Increased in an Advisory Guidelines Regime? Evidence from Booker*, 89 N.Y. L. J. 1268 (Oct. 2014).  An individual judge's own inconsistency must be of great concern, lest discretion fade into arbitrariness and reflection of momentary moods.  *Cf.* Shari Danziger, Jonathan Levav & Liora Avnaim-Pesso, *Extraneous Factors in Judicial Decisions*, 108 Proceedings of the Nat'l Acad. of Sci. of the U.S. 6889 (2011).

This court has been attempting to rationalize its own sentences by establishing general criteria for "similar" cases.  *See, e.g.*, *United States v. Chin Chong*, 13-CR-570, 2014 WL 4773978 (E.D.N.Y. Sept. 24, 2014) (accounting for prospect of deportation when imposing a term of incarceration); *United States v. Sarpong*, 14-CR-242, 2014 WL 5363775, at *2

7

(E.D.N.Y. Oct. 21, 2014) (same); *United States v. Palaguachy*, 14-CR-0184, 2014 WL 6606668, at *2 (E.D.N.Y. Nov. 19, 2014) (same); *United States v. Florez Parra*, 14-CR-332, 2015 WL 105885, at *2 (E.D.N.Y. Jan. 7, 2015) (same). *See also United States v. Bannister*, 786 F. Supp. 2d 617, 688 (E.D.N.Y. 2011) (sentencing nine defendants in a group for internal consistency and reassurance to community); *United States v. C.R.*, 972 F. Supp. 2d 457, 459 (E.D.N.Y. 2013) (criticizing statutory minimums).

Although the Sentencing Guidelines for drug crimes have been reduced, they are still excessive. *Cf.* Report on the Continuing Impact of *United States v. Booker* on Federal Sentencing, U.S. Sentencing Comm'n (2012) (outlining frequency with which judges deviate from Guidelines). *See also United States v. Bannister*, 786 F. Supp. 2d 617, 651 (E.D.N.Y. 2011); *United States v. C.R.*, 972 F. Supp. 2d 457, 459 (E.D.N.Y. 2013).

> [R]anges for drug trafficking offenses are not based on empirical data, Commission expertise, or the actual culpability of defendants. If they were, they would be much less severe, and judges would respect them more. Instead, they are driven by drug type and quantity, which are poor proxies for culpability.

*United States v. Diaz*, 11-CR-00821-2, 2013 WL 322243, at *1 (E.D.N.Y. Jan. 28, 2013); *see also United States v. Dossie*, 851 F. Supp. 2d 478, 481 (E.D.N.Y. 2012) (same).

## VI. Law

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in section 3553(a)(4) of Title 18, the court shall indicate the specific reasons for imposing a sentence different from the Guidelines.

8

18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in the written order of judgment and commitment." *Id*. Even though the mandatory nature of the Guidelines has been excised and they are now "advisory," *United States v. Booker*, 543 U.S. 220, 245–46 (2005), the sentencing court must still adhere to the necessity of justifying a sentence. *See* section 3553(c)(2) of Title 18, *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons should be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). Such a statement should demonstrate that the court "considered the parties' arguments and that it has a reasoned basis for exercising its own legal decisionmaking authority." *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)) (internal quotation marks and alterations omitted).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society and our economy, parsimony in incarceration is prized. *See, e.g.*, 18 U.S.C. § 3553 (a) ("The court shall impose a sentence sufficient, but not greater than necessary"); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and Consequences*, 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

## VII. 18 U.S.C. § 3553(a) Considerations

In sentencing G.L., the "nature and circumstances of the offense and the history and characteristics of the defendant" were considered. 18 U.S.C. § 3553(a)(1).

9

G.L.'s use of her daughter as camouflage to evade detection is a matter of grave concern. Her daughter faced great risks. She was likely to have been traumatized by witnessing the detention of her mother. Selfish use of a child by a parent to aid in criminal activity may indicate a higher than normal risk of future criminality.

Nevertheless, in light of the serious adverse effect that defendant's incarceration would have on her daughter, the court delayed sentencing for six months, in contemplation of a sentence of time served and supervised release. *See* Hr'g Tr., Aug. 20–21, 2014.

### VIII. Present Status

On March 4, 2015, Pretrial Services reported on G.L.'s progress. Pretrial Supervision Status Report, Mar. 4, 2015. She has maintained employment, reported when required, has not been rearrested, has taken care of her daughter's needs and is establishing a stable, lawful life. *Id*. *See also* Hr'g Tr. 3:12– 4:10, Mar. 17, 2015

### IX. Sentence

On March 17, 2015, G.L. was sentenced to time served (one day) with a supervised release term of five years. If the situation remains stable, defendant or probation may move to end supervised release early. A special assessment of $100 was levied.

Under section 3553(a)(2)(B) of Title 18, a sentencing court must consider, among other factors, two major factors: general and specific deterrence. General and specific deterrence are achieved by the sentence imposed. All elements of the Sentencing Guidelines and statutes were considered and satisfied. Respectful consideration was given to the Sentencing Commission's policy statements, and all other requirements listed under section 3553(a) of Title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing.

As stipulated and agreed to by the government, this statement of reasons for the sentence shall be published under a pseudonym. H'rg Tr. 6:10–14, Mar. 17, 2015. *Cf. United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (stating test for limiting public access to information before the court). *But see United States v. Reingold*, 731 F.3d 204, 206, n.2 (2d Cir. 2013) (requiring publication of defendant's name).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: April 2, 2015
      Brooklyn, New York